McARTHUR BROS. CO., Limited, v. 622,714 FEET OF LUMBER.

McARTHUR v. 836,693 FEET OF LUMBER.

(District Court, W. D. New York.  March 31, 1904.)

Nos. 102, 103.

1. ADMIRALTY—DEMURRAGE—DELAY IN LADING—FAULT.

Libelants of a cargo were not entitled to recover demurrage for delay in loading where the proof showed that whatever delay arose was owing to the failure of the steamer and tow to arrive as scheduled, by reason of which other vessels arrived, and were loaded in turn at the dock, in accordance with the customs of the port.

2. SAME—DISCHARGE—REASONABLE DISPATCH—DELAY.

Where, by the exercise of customary diligence and promptitude, a steamer and tow could have been unloaded 2½ days earlier than the discharge was effected, the consignee was liable for the delay.

In Admiralty.

Harvey L. Brown, for libelants.

Moot, Sprague, Brownell & Marcy, for respondents.

HAZEL, District Judge. The libelants are not entitled to recover demurrage for delay in loading the steamer Tecumseh and barge Marengo at Parry Sound. The proofs show that whatever delay arose at that port was owing to the failure of the steamer and tow to arrive, as scheduled, on November 8, 1901. They arrived two days later. Meanwhile other vessels arrived, and were loaded in turn at the dock

¶ 1. See Shipping, vol. 44, Cent. Dig. §§ 572, 587.

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

where the Tecumseh and barge were to take cargo. By universal rule, such vessels were entitled to priority in loading. Empire Co. v. Phila. & R. Coal & Iron Co., 77 Fed. 919, 23 C. C. A. 564, 35 L. R. A. 623; Williscroft v. Cargo of Cyrenian (D. C.) 123 Fed. 169. The subsequent loading of libelant's steamer and tow was in the usual order of precedence, and, considering the limited facilities of the port, was accomplished with all reasonable promptitude. The Tecumseh and her tow, the Marengo, arrived at the respondent's dock in Erie Basin at Buffalo, N. Y., the port of discharge, at 9 o'clock in the forenoon of November 26, 1901, and immediately tendered delivery of their cargo of lumber to the claimant, who was the consignee. According to the evidence, a reasonable time, under favorable conditions, in which a steamer and barge could have been unloaded, was three days. Unloading, however, was not begun on the Tecumseh until November 30th, and on the barge not until December 2d. There was some delay on account of the prior arrival of other lumber-carrying vessels, which, as already stated, were entitled to be unloaded in turn ahead of libelant's steamer and tow. Other evidence is found in the record to show that the cargo, in view of the circumstances, was discharged, with reasonable diligence. Consideration of the entire case, however, is certainly persuasive that both ships could have been unloaded with less delay. The respondent is chargeable with knowledge of the arrival of the Tecumseh and Marengo, and, although the promptitude with which the vessels were to be unloaded was not expressly stipulated, nevertheless the charterers impliedly agreed to unload the cargo within a reasonable time, and in accordance with custom and usage of the port. Cargo was not discharged until December 6th. As already stated, there was some delay because of unusually congested conditions at Buffalo, owing to the approaching close of the season of navigation. A fair preponderance of the evidence shows that there was an unreasonable delay of 2½ days through failure of the consignee to provide necessary facilities for a speedier discharge of the cargoes carried by the libelant's vessels. Libelants had the right to expect that cargo would be discharged with reasonable dispatch, and, further, that when unloading commenced the lumber would be moved with customary diligence and promptitude, unless prevented by extraordinary conditions. No such conditions are shown by the proofs as will justify denying to libelants demurrage for delay held to be unreasonable. It appears that the lien for demurrage has not been waived or abandoned. The evidence of Capt. Smith, a disinterested witness for libelants, shows that the earning capacity of the Tecumseh is $61 per day, and that of the Marengo $29 per day. Some evidence was given by respondents to the effect that the crew of the Marengo was discharged on arrival of the barge at this port. Such evidence has not sufficient weight to negative the testimony of Capt. Smith that, despite the lateness of the season, the barge had an earning capacity in the amount stated.

I therefore decide that libelants are entitled to recover damages as follows: On the libels filed in behalf of the Tecumseh, $152.50; and in the case of the Marengo, $72.50—besides costs in each case.